CUNNINGHAM ET AL. *v.* GRANT COUNTY GRAVEL AND
SAND COMPANY.

[No. 14,031. Filed May 1, 1931. Rehearing denied October 6,
1931. Transfer denied June 9, 1933.]

*Blessing & Stevenson* and *S. C. Kivett,* for appellants.

*John R. Brown, Robert M. Van Atta* and *Gemill,
Browne & Campbell,* for appellee.

LOCKYEAR, C. J.—This action arose out of a contract
whereby the appellee agreed to furnish to the appellants
sand and gravel for the construction of a certain state
highway in Grant County, Indiana.

The appellee's complaint is for the balance due on
account.

The appellants filed a cross-complaint to recover dam-
ages for the alleged breach of the contract with refer-
ence to the furnishing of sand and gravel. The case
was submitted to the court for trial without the inter-
vention of a jury. There was a finding for the appellee

upon its complaint in the sum of $6,047.54, and a finding against the appellants on their cross-complaint. Judgment was rendered accordingly.

Appellants filed a motion for a new trial on the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law, and also that the court erred in the assessment of the amount of the recovery in favor of the appellee in that the amount is too large.

The material allegations of the complaint are that on or about the 24th day of April, 1926, the appellants entered into a contract with the State Highway Commission of Indiana to construct and improve a part of a certain highway known as Section A. Federal Aid Project No. 101, the same being a part of State Road No. 11 and State Road No. 9 near Marion, Indiana, and extending in a northeasterly direction to a point near Mt. Etna in Huntington County, Indiana.

That the appellee was engaged in the business of operating a gravel and sand pit at or near the city of Marion and in selling gravel and sand therefrom for the construction of public highways and other public works. That it was then and there agreed between the appellee and the appellants that the appellants would pay to the plaintiff for all sand delivered to them at the rate of 50 cents per ton f. o. b. appellee's pit and for all gravel delivered to them at the rate of 67 cents per ton f. o. b. the pit.

The appellee sets out in its complaint the amount of sand and gravel delivered to appellants and shows that at the contract price the appellee delivered sand and gravel to the value of $12,165.90; that the appellants have paid on said account the sum of $4,500, leaving a balance due of $7,665.90, together with interest at the rate of 6 per cent from the 21st day of September, 1926, for which amount it prays judgment.

The complaint of appellee is based upon a contract partly written and partly oral, and is therefore treated by the court as an oral contract.

The appellants, in their cross-complaint, say that the contract was in writing and consists of a letter written by the appellant to the appellee and a letter received from the appellee in answer thereto, which letters are as follows, to wit:

"Anderson, Indiana,
April 24, 1926.

Grant County Sand and Gravel Co.,
Marion, Indiana.

Gentlemen:—

As per our understanding the other day when your Mr. Messic and Mr. Warner were in our office, you agreed to furnish all the sand and gravel on our present state highway contract on Road No. 11, extending from Marion, Indiana, to Mt. Etna.

This material is to be delivered to our siding· to be located later at a price of 50 cents per ton f. o. b. plant for sand and 67 cents per ton f. o. b. plant for gravel. Said material to meet state highway specifications and in sufficient quantities that will permit us to progress with the work.

Yours very truly,
Cunningham Construction Co.,
By Fred Cunningham."

"April 26, 1926.

Cunningham Construction Co.,
Indianapolis, Indiana.

Gentlemen:—

Confirming your letter of the 24th inst., we agree to furnish you all the sand and gravel necessary on your state highway contract Road No. 11 extending from Marion, to Mt. Etna, Indiana. This material to be de-

livered to your siding at or near Otis, Indiana, at a price of 50 cents per ton for sand and 67 cents per ton for gravel f. o. b. our gravel plant, said material to meet state highway specifications. Our regular form of contract will be made up within the next few days for your approval.

Yours very truly,
Grant County Sand and Gravel Co.,
By Samuel Warner."

It is alleged in said cross-complaint that the appellee negligently refused and failed to carry out this contract and furnish sand and gravel in quantities to meet the requirements of said contract and because of said failure the appellants were compelled and did purchase in the open market from other producers a total of 17,022.05 tons of gravel and 8,051.50 tons of sand, at the best price obtainable, that the same could be procured, and that the cost of additional freight rate and expense of handling same and additional prices required to be paid over and above the price that the appellee and appellant agreed upon amounted to $8,128.12 in addition to what the cost of said material would have been if the appellee had furnished said material under the terms of said contract.

The appellee filed an answer to this cross-complaint in three paragraphs, the first of which is in general denial and the second alleges that each and all of the matters and things mentioned and referred to and alleged in said cross-complaint were fully paid, compromised and adjusted before the commencement of this action.

The third paragraph of answer contains substantially the same facts as are set out in the appellee's original complaint. There is no serious contention but that there is ample evidence to support the contention that appellee

furnish the amount of sand and gravel set out in their complaint and there is no dispute as to the prices agreed upon.

To support the contention of the appellee as set out in its second paragraph of answer to the cross-complaint, appellee introduced in evidence the testimony of Allen G. Messic, a director of the appellee company, who testified for the appellee on direct examination that: "There was a meeting at my office and a discussion as to who would pay the freight. Mr. Cunningham said that there was a shortage in the gravel. Mr. Meyers, and some engineers were there representing the traction company. Cunningham said that they had to pay a much higher freight rate on the gravel from Anderson. They went into the other room. Mr. Warner stated that Mr. Cunningham and he had agreed to allow credit not to exceed 1,000 yards of sand, that the amount might vary, and that our bill would be paid the next day, and that we were to furnish the material to finish the road.

"Cunningham stated then and there that his company would give us a check for our account the next day; that the traction trouble was ended and that we were to allow him 1,000 yards of sand, etc.

"We then shook hands and separated. Cunningham had paid us $3,500 on account, and nothing was said about it being for freight."

Linfield Meyers, a director of appellee company, testified on the subject of compromise and settlement; that at the meeting at which the settlement was made appellee offered 1,000 yards of sand to pay appellants' shortage, extra freight, etc.

The questions and answers propounded to him were as follows:

"Q. The question was, The only thing that you

finally offered him (Cunningham) to pay him for shortage was 1,000 yards of sand?

"A. That is right.

"Q. Was anything said about whether that would be enough to pay for it?

"A. Yes.

"Q. What did he (Cunningham) say?

"A. He said he was satisfied."

Samuel Warner, president of appellee company, testified: "I told Cunningham we should get together on our differences and I said to him, how much sand will satisfy you in full settlement. He said I will take 1,000 yards of sand and be satisfied. Said he would pay the freight. I said we would credit him with 1,000 yards on account or ship him 1,000 yards and that proposal was satisfactory. We called in Messic and Cunningham agreed to give us a check for our account at the next meeting. He settled the freight the next day, but did not pay us anything on our account. In 2 or 3 weeks Meyers and I met him again in Marion and he said his brother objected to the settlement. We never failed to furnish the appellant with all the sand and gravel they asked for."

Whether the contract was oral or written was a question of fact for the trial court to decide.

There is sufficient evidence in the record for the trial court to find either that the contract was an oral one as claimed by the appellee or that it was a written one as claimed by the appellant, and if the trial court believed the witnesses for the appellee that there was a compromise and settlement of the differences wherein the appellant agreed to the terms of settlement for the sand and gravel that the appellee failed to furnish, he was justified in finding that there was a balance due the appellee in the sum of $6,047.54.

The question being one of fact only and there being competent evidence to support the finding and judgment can not be disturbed on appeal.

There being no reversible error in the record, the judgment is affirmed.